**Jarvis L. WATSON, Jr., Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 32A04–0501–CR–32.**

Court of Appeals of Indiana.

Dec. 30, 2005.

Paula M. Sauer, Danville, for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Jarvis Watson, Jr., appeals his conviction of dealing in cocaine as a Class A felony.[1] He raises two issues, one of which we find dispositive: whether the evidence was sufficient to convict him of dealing in cocaine.[2]

We reverse.

1. Ind.Code § 35–48–4–1(b).

2. Because of our resolution of this case, we need not address whether the trial court erred by declining to instruct the jury as to the definition of a controlled buy.

3. The quality of the audio tape recording of the transaction was poor. Detective Weber admitted the tape was "extremely fuzzy." (Tr. at 232.) Another detective agreed there

## FACTS AND PROCEDURAL HISTORY

On June 24, 2004, Detective Carri Weber received information from one of her female confidential informants ("the CI"). The CI told Detective Weber she had arranged to purchase cocaine from Watson later in the day in the parking lot of the White Castle restaurant in Plainfield. Detective Weber notified other members of the United Drug Task Force ("UDTF"), picked up the CI from her residence, and met with the UDTF to prepare for the drug buy. Officers photocopied $350.00 to be used for the buy ("buy money"), gave the buy money to the CI, and outfitted her with an audio transmitter.[3] One officer took the CI to the White Castle to await Watson's arrival. The CI was not searched before the buy. Weber and another detective observed from across the street, and other officers observed nearby.

Shortly before 5 p.m., Watson arrived at White Castle. The CI got into Watson's vehicle, remained there for about ten to twenty seconds, and then exited the vehicle. On Detective Weber's signal, uniformed officers arrived and took both Watson and the CI into custody.[4] The buy money was found, with other money, in Watson's pocket. In the CI's front pocket was a bag containing 3.25 grams of cocaine.

The State charged Watson with dealing in cocaine as a Class A felony and possession of cocaine as a Class C felony.[5] At

was "no intelligible audio or video tape of this whole event." (Id. at 317.)

4. The CI was taken into custody to maintain the fiction she was not working for the police.

5. Ind.Code § 35–48–4–6(b). At the same time, the State charged Watson with dealing in cocaine as a Class A felony and possession of cocaine as a Class C felony based on similar events that occurred on June 10, 2004.

trial, the CI did not testify and police officers testified the C.I. was not searched prior to the buy. A jury found Watson guilty. The trial court vacated the possession conviction on double jeopardy grounds and sentenced Watson to the maximum forty-year sentence.

## DISCUSSION AND DECISION

In reviewing a claim of insufficient evidence, we will affirm the conviction unless, considering only the evidence and all reasonable inferences favorable to the judgment, we conclude no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Hill v. State*, 825 N.E.2d 432, 437 (Ind.Ct.App. 2005). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.*

The State was required to prove Watson knowingly or intentionally delivered to the C.I. cocaine, pure or adulterated, weighing more than three grams. *See* Ind.Code § 35–48–4–1. Because delivery is the "actual or constructive transfer from one (1) person to another of a controlled substance," Ind.Code § 35–48–1–11, the State had to show Watson possessed the cocaine before the buy and transferred it to the CI.

■ Watson argues "only by speculation could the jury have concluded that [he], and not the CI, was the source of the cocaine found in CI's possession after the encounter." (Br. of Appellant at 4.) Specifically, he asserts the buy was not "controlled" because the CI was not searched prior to the buy. Therefore, Watson asserts, the State's evidence falls short of proving he possessed the cocaine before the buy and transferred it to the CI.

The State responds the CI was under police observation the entire time, "wore

tight clothes and was aware of the repercussions of possessing drugs" when working with the police. (Br. of Appellee at 6.) She had previously completed several controlled buys for the police and police had never discovered controlled substances on her. Even though the CI was not searched prior to the buy, the State asserts the evidence is sufficient to support Watson's conviction.

Because the CI was not searched prior to the buy and the CI did not testify about receiving the cocaine from Watson, we must agree with Watson that no reasonable fact-finder, based on this evidence alone, could have found beyond a reasonable doubt he originally possessed the cocaine found on the CI after the buy.

■ A properly conducted controlled buy will permit an inference the defendant had prior possession of a controlled substance. We have described a controlled buy:

A controlled buy consists of *searching the person who is to act as the buyer,* removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Mills v. State,* 177 Ind.App. 432, 435, 379 N.E.2d 1023, 1026 (1978) (emphasis supplied). *See also Haynes v. State,* 431 N.E.2d 83, 86 (Ind.1982) (quoting *Mills* with approval); *Iddings v. State,* 772

The State dismissed those charges before trial.

N.E.2d 1006, 1012 (Ind.Ct.App.2002) (describing requirements of controlled buy), *trans. denied* 783 N.E.2d 700 (Ind.2002); *Caudle v. State,* 749 N.E.2d 616, 619–20 (Ind.Ct.App.2001) (upholding search warrant where officer provided details sufficient for magistrate to determine buy was controlled as described in *Mills* ), *clarified on reh'g* 754 N.E.2d 33 (Ind.Ct.App.2001), *trans. denied* 761 N.E.2d 422 (Ind.2001); *Castillo v. State,* 734 N.E.2d 299, 306 (Ind. Ct.App.2000) (explaining mechanics of a controlled buy by quoting *Mills* ), *reh'g denied, trans. denied (appellant) and trans. granted (appellee) and opinion summarily affirmed by* 741 N.E.2d 1196 (Ind.2001); *Methene v. State,* 720 N.E.2d 384, 389–90 (Ind.Ct.App.1999) (same); *Flaherty v. State,* 443 N.E.2d 340, 341 (Ind.Ct.App.1982) (same); *Whirley v. State,* 408 N.E.2d 629, 631 (Ind.Ct.App. 1980) (discussing underpinnings of *Mills* ).

Presumably, the pre-buy search establishes the person making the purchase for the police does not have contraband prior to the transaction with the target. Surveillance during the transaction establishes the target as the source of the contraband and excludes other sources of contraband. Thus, any contraband discovered during a search after the transaction is attributable to the target of the controlled buy. Here, where the CI was not searched initially, such an inference cannot be made.

The State argues other circumstantial evidence suggests Watson was the source of the cocaine. Detective Weber testified the CI contacted her because the CI had arranged to purchase cocaine from Watson later that day. The State also presented evidence Watson had the buy money after the transaction. Because the CI gave the buy money to Watson, the State argues a jury could have reasonably inferred that,

in exchange, Watson provided the cocaine to the CI as they had planned.

We are unwilling to hold that where the CI is not searched prior to the controlled buy and the CI does not testify at trial, a defendant's possession of the buy money is sufficient to sustain a conviction. In *Toney v. State,* 715 N.E.2d 367 (Ind.1999), Toney argued there was insufficient evidence he dealt cocaine because the pre-buy search of the informant was inadequate. The informant testified at trial regarding the buy. The alleged inadequacy of the search notwithstanding, our Indiana Supreme Court held possession of the buy money coupled with the informant's testimony at trial was sufficient to uphold the conviction. *Id.* at 367.

However, this case differs from *Toney,* as the CI did not testify against Watson. As a result, we find the lack of a pre-buy search is fatal to the State's charge of dealing in cocaine. We emphasize that had the CI testified or had she been properly searched before the buy, the jury would have had a reasonable basis for believing Watson had the cocaine before the buy. Because neither occurred in this case, the jury was left to speculate as to whether Watson or the CI initially had the cocaine. "A conviction cannot be based on speculation." *Gross v. State,* 817 N.E.2d 306, 310 (Ind.Ct.App.2004). Accordingly, we reverse.

Reversed.

KIRSCH, C.J., and ROBB, J., concur.