**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 09 2014, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**LORINDA MEIER YOUNGCOURT**
**DANIEL DIXON**
Lawrence County Public Defender
Bedford, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL DUSTIN MOORE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 47A01-1308-CR-350 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAWRENCE SUPERIOR COURT
The Honorable Michael A. Robbins, Judge
Cause No. 47D01-1006-FB-690

**June 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

A first-time heroin user asked if someone would inject him with heroin, and Michael Dustin Moore volunteered. That person later died from a heroin overdose. An investigation ensued, and Moore was interviewed by detectives. The State charged Moore with Class B felony dealing in a schedule I controlled substance stemming from the overdose, and a jury found him guilty. Moore now appeals arguing that the trial court abused its discretion by admitting his statements to the detectives into evidence because they were involuntary, the evidence is insufficient to sustain his conviction, and his twenty-year sentence is inappropriate in light of the nature of the offense and his character.

Looking at the totality of circumstances, we conclude that the State has proved that Moore's statements were voluntarily given by a preponderance of the evidence; therefore, the trial court did not abuse its discretion in admitting them into evidence. In addition, we find that the evidence is sufficient to prove that Moore knowingly delivered heroin. Finally, we find that Moore has failed to persuade us that his twenty-year sentence is inappropriate. We therefore affirm the trial court.

**Facts and Procedural History**

The facts most favorable to the verdict follow. On the evening of April 10, 2010, Dayna Sorrells and Kristy Byers Fountain met two men from Kentucky for drinks at Jack's Lounge in Mitchell, Indiana. Before going to the bar, Dayna "got a buzz" by drinking and taking Lortab and Xanax pills. Tr. p. 232, 273. The women were not interested in the Kentucky men and had drinks with their friend Alan Napier instead. *Id.* at 233. While at the bar, Alan asked Dayna if she could find him an opiate drug. *Id.* at 238-39. Dayna told

2

Alan that "[w]e can look," knowing that her friend Gerald Pickett likely had heroin. *Id.* at 239. Shortly thereafter, Gerald and Moore arrived at the bar, and the group drank together until they decided to go to Dayna's house to "get high." *Id.* at 233-35.

Gerald brought heroin with him to Dayna's house. *Id.* at 236. Dayna used an insulin needle to inject herself with heroin in the bathroom. *Id.* at 238. Dayna also saw Alan buy heroin from Gerald. *Id.* Before Alan bought heroin, he asked if someone would inject him. *Id.* at 244. Alan had never tried heroin before. *Id.* at 288. It is common for first-time heroin users to have someone else inject them. *Id.* at 281. According to Dayna, Moore told Alan that he would inject him with heroin. *Id.* at 247. Kristy saw Moore holding a syringe. *Id.* at 289. Dayna then saw Moore kneel next to Alan before she blacked out from her own heroin use. *Id.* at 248-49. Dayna did not see Moore actually inject Alan. *Id.* at 276; *see also id.* at 296 (Kristy: "I did not see anybody inject anybody with anything.").

After Alan was injected with heroin, he began "nodding out, passing out," and slurring his words. *Id.* at 291-92. Someone took Alan to a cot in Dayna's dining room. *Id.* at 292. According to Dayna, Alan "was really, really messed up." *Id.* at 250. Dayna, however, thought that Alan's condition was a result of the alcohol and that "he was just drunk and needed to sleep it off." *Id.* at 251. Kristy, who has a nursing degree, checked Alan's pulse and breathing and confirmed that he was responsive. *Id.* at 292.

Moore, Gerald, Dayna, and Kristy left Alan on the cot and returned to Jack's Lounge. Raith Coulter, a friend of Dayna, joined them at the bar. *Id.* at 321. They continued to drink more alcohol until the bar closed around 3:30 a.m. *Id.* at 252. Moore

drove everyone from the bar back to Dayna's house. *Id.* at 322. On the way to Dayna's house, Moore dropped off Kristy at her house. The rest of them returned to Dayna's house.

When they arrived at Dayna's house, Dayna noticed that Alan was still on the cot and "looked like he was the wrong color." *Id.* at 254. Dayna called 911. Paramedics attempted to resuscitate Alan as they transported him from Dayna's house to Dunn Memorial Hospital[1] in Bedford where he was pronounced dead. *Id.* at 109, 434.

Indiana State Police Detectives Bradley Stille and Michael Bartram investigated Alan's death. After receiving information from a confidential informant,[2] the investigation turned to Moore as the person who had injected Alan and Gerald as the person who had supplied the heroin. *Id.* at 141. Based upon the toxicology report from Alan's autopsy, forensic pathologist Dr. James Jacobi concluded that Napier died as a result of a heroin overdose. State's Ex. 13.

On the afternoon of April 13, 2010, Detectives Bartram and Stille transported Moore to the Mitchell Police Department for an interview. *Id.* at 151. Although the detectives told Moore that he was not in custody or under arrest, Detective Stille advised him of his *Miranda* rights. *Id.* at 22, 152. Moore also signed a waiver-of-rights form. *Id.* at 152-53.

Moore's interview was audio-recorded.[3] During the interview, which lasted approximately one hour and twenty minutes, Joint Ex. 1, p. 1, 71,[4] Detective Stille

---

[1] The hospital is now called St. Vincent Dunn Hospital.

[2] The confidential informant was Johnny Jones, Jr., who was living with Kristy at the time of Alan's death. Tr. p. 187-88.

[3] At that time, the police department did not have video-recording capabilities.

[4] The CD of Moore's interview with the detectives has been retained in the Lawrence Superior Court I's exhibit cabinet. *See* State's Ex. 11. Therefore, when referring to that interview, we will use the

4

promised Moore that if he was truthful he would not be charged with homicide or murder. Tr. p. 27, 45; Joint Ex. p. 26, 27, 29, 30. But Detective Stille told Moore that when they walked out of the interview room, "th[e] deal [must be] done." Joint Ex. p. 26. Later in the interview, Detective Stille, encouraging Moore to tell the truth, stated, "But you have to ask yourself, are you going to be a witness and . . . help me or are you going to be a defendant and say you don't know nothing [sic] . . . ." *Id.* at 31. A little later in the interview, Detective Bartram said, "Dustin, if you [gave Alan the shot], it's not murder, it's not homicide. We're not looking to charge you. But we need to know what happened. Okay?" *Id.* at 34; *see also id.* at 33 (Detective Stille: "I've already promised you that you're not going to get into trouble for homicide, for murder, for his death, okay, for immediately causing his death, okay? If the guy, you know, if the guy asks for [heroin], I mean.").

Eventually, Moore admitted giving Alan a shot of heroin after Gerald filled the syringe. *Id.* at 38, 41, 61. As Gerald was filling the syringe, Moore instructed him not to put too much heroin in it because of Alan's lack of experience with heroin. *Id.* at 43-45. Toward the end of the interview, while asking Moore about Gerald's involvement with heroin,[5] Detective Bartram told Moore that "we're not giving you a get out of jail free card, okay?" because Moore shared "responsibility" for what happened. *Id.* at 64, 65. When the interview was over, Detective Stille drove Moore home.

---

transcript from the motion-to-suppress hearing that was admitted at trial as joint stipulated suppression exhibit 1. *See* Tr. p. 51-52. Hereinafter, we will cite this transcript as Joint Ex. p. ____.

[5] The detectives told Moore that they were after a bigger fish—Gerald. Tr. p. 30. Although Gerald was initially charged in connection with Alan's overdose, *see* Appellant's App. p. 157, the record shows that Gerald was suffering from renal disease at the time of these events and died in July 2011. Tr. p. 244-45 (describing Gerald at the time of these events as having kidney problems, weight loss, shaky hands, yellow eyes, trouble walking, and on the kidney transplant list); State's Ex. 24 (Gerald's death certificate).

Two and one-half months later, the State charged Moore with Class B felony dealing in a schedule I controlled substance. Appellant's App. p. 13. Moore was out on bond awaiting trial with several conditions, including that he refrain from all alcohol and controlled-substance use. *Id.* at 3-4 (CCS). Before trial, Moore filed a motion to suppress his statements to Detectives Stille and Bartram, arguing that they were not voluntary. *Id.* at 50-54. At the suppression hearing, Moore testified that he felt he "was supposed to say [he] gave [Alan] a shot [of heroin] because [the detectives] wanted [him] to say that to get this case over with and that they wanted [Gerald] and not [him] . . . [and] if [he] said that, that . . . would make [him] the witness and not the defendant." Tr. p. 50. When asked if he thought charges other than homicide would be filed against him, Moore answered that he did not know what to think. *Id.* The trial court denied Moore's motion to suppress.

A jury trial was then held. During trial, Moore objected to the admission of the audio recording of his interview with the detectives, and the trial court overruled his objection. *Id.* at 336-42. The jury found Moore guilty as charged. After the jury verdict, Moore was drug tested and tested positive for marijuana and methamphetamine.

At the sentencing hearing, Moore admitted that he was an addict and that he had a drug problem. *Id.* at 483. Moore testified that if he had taken his drug addiction seriously, he would not have been with Dayna, Kristy, Alan, and Gerald on that night. *Id.* He apologized for all the heartache and pain that his addiction caused. *Id.* The trial court found several aggravating circumstances. First, the court found as a significant aggravator that the crime resulted in the death of Alan. *Id.* at 487. Second, the court found Moore's criminal history as an aggravator. Although Moore's prior convictions are only

6

misdemeanors, they are drug or alcohol related.[6]  *Id.* at 484; Appellant's App. p. 159-161. In addition, each conviction has a probation-revocation proceeding associated with it.  *Id.* Third, the court noted that after the jury verdict, Moore tested positive for marijuana and methamphetamine, which violated one of the conditions of his pretrial release.  Tr. p. 484, 487; Appellant's App. p. 187-88.  Fourth, the trial court found that Moore had "zero remorse" despite his statements, because those were statements "of a person who fears prison and is trying to dodge further responsibility as he always has."  Tr. p. 487.  Finally, the court found that a sentence less than an enhanced term would depreciate the seriousness of the crime.  *Id.*  The court found no mitigating circumstances.  *Id.* at 488.  Accordingly, the court sentenced Moore to twenty years in the Department of Correction.  *Id.*

Moore now appeals.

### Discussion and Decision

Moore raises three issues on appeal.  First, Moore contends that the trial court abused its discretion by admitting his statements to the detectives into evidence because they were involuntary.  Second, he contends that the evidence is insufficient to sustain his conviction for Class B felony dealing in a schedule I controlled substance.  Third, Moore contends that his twenty-year sentence is inappropriate in light of the nature of the offense and his character.

### I. Admission of Moore's Statements to the Detectives

Moore contends that his statements to Detectives Stille and Bartram were involuntary.  When a defendant challenges the voluntariness of his confession under the

---

[6] Moore has a prior conviction for Class D felony possession of cocaine that was later entered as a Class A misdemeanor.

7

United States Constitution, the State must prove that the statement was voluntarily given by a preponderance of the evidence.[7] *Bond v. State*, 2014 WL 1910966, --- N.E.3d --- (Ind. May 13, 2014) (citing *Pruitt v. State*, 834 N.E.2d 90, 114 (Ind. 2005), *reh'g denied*). We examine the totality of the circumstances as presented by the record, and are guided by several factors including police coercion; the length, location, and continuity of the interrogation; and the defendant's maturity, education, physical condition, and mental health. *Id.* (citing *Miller v. State*, 770 N.E.2d 763, 767-68 (Ind. 2002)). "'The critical inquiry is whether the defendant's statements were induced by violence, threats, promises or other improper influence.'" *Id.* (quoting *Ringo v. State*, 736 N.E.2d 1209, 1212-13 (Ind. 2000)). As our Supreme Court recently reiterated in *Bond*,

> [T]he Fourteenth Amendment forbids the use of involuntary confessions not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will.

2014 WL 1910966 (quotations omitted).

Moore argues that his statements to the detectives were involuntary because they were "secured by promises of immunity from criminal prosecution." Appellant's Br. p. 10. Specifically, Moore claims that Detective Stille promised him complete immunity when he stated that Moore could either be "a witness" *or* "a defendant," which meant that he would not be charged with anything if he cooperated. *Id.* at 11 (citing Joint Ex. p. 31

---

[7] In support of his argument, Moore cites only the United States Constitution. *See* Appellant's Br. p. 8 ("Governing Law" section). The Indiana Constitution would have required the State to meet the higher hurdle of proving voluntariness beyond a reasonable doubt. *See Bond*, 2014 WL 1910966 (citing *Pruitt v. State*, 834 N.E.2d 90, 114-15 (Ind. 2005), *reh'g denied*). To the extent Moore references the state standard, he does not articulate a distinct argument for a state claim.

8

("But you have to ask yourself, are you going to be a witness and . . . help me or are you going to be a defendant and say you don't know nothing [sic] . . . .")). Moore also notes that Detective Bartram said in the interview, "Dustin, if you did it, it's not murder, it's not homicide. *We're not looking to charge you*. But we need to know what happened. Okay?" Joint Ex. p. 34 (emphasis added).

It is well settled that "vague and indefinite statements by the police that it would be in a defendant's best interest if he cooperated do not render a subsequent confession inadmissible." *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004); *see also Whitfield v. State*, 699 N.E.2d 666, 669 (Ind. Ct. App. 1998) ("[V]ague and indefinite statements by the police are not sufficient inducements to render a confession inadmissible."), *trans. denied*. In addition, implied promises by the police are too indefinite to constitute the type of inducement rendering the defendant's confession involuntary. *Gary v. State*, 471 N.E.2d 695, 698 (Ind. 1984).

Here, the detectives told Moore numerous times that he would not be charged with homicide or murder. Notably, they did not tell him that he would not be charged with any lesser drug-related crimes; rather, they carefully limited their statements to homicide and murder charges. Detective Stille's statement that Moore could be a witness or a defendant was not definite enough to constitute a promise that if he told the truth, he would be completely immune from prosecution. *See Bond*, 2014 WL 1910966 ("A police officer may engage in a number of tactics and techniques to induce a confession without rendering that confession involuntary."). Additionally, Detective Bartram's statement that the detectives were not looking to charge him referred back to the prior sentence of not

9

charging him with homicide or murder—not to the possibility of not being charged at all. And at the end of the interview, Detective Bartram confirmed that Moore was not being promised complete immunity from prosecution when he stated, "we're not giving you a get out of jail free card" because he shared "responsibility" for what happened. Joint Ex. p. 64, 65.

Further, all of the detectives' statements must be considered within the totality of the circumstances. Regarding the detectives' promise that Moore would not be charged with homicide or murder, it was fulfilled; the State did not charge Moore with homicide or murder but rather Class B felony dealing in a schedule I controlled substance.[8] Regarding other aspects of the interview, the length of the interrogation was approximately one hour and twenty minutes. Tr. p. 25; Joint Ex. p. 1, 71. Although the interview was conducted at the police station, Moore was not taken into custody before he was interviewed, and Detective Stille drove him home when the interview was over. Tr. p. 20, 28. He was advised of his rights and voluntarily waived them. Joint Ex. p. 1-2; Tr. p. 21-22. Moore also signed an advice-of-rights form. At the time of the interview with the detectives, Moore was thirty-nine years old and had graduated high school. Appellant's App. p. 157-58. Moore had also attended some college. *Id.* at 158. No evidence was presented that Moore was intoxicated during the interview. Finally, Detective Stille described the atmosphere as relaxed and comfortable and said that Moore was not yelled at or threatened in any way. Tr. p. 26-27. Looking at the totality of circumstances, we conclude that the

---

[8] The detectives had the authority to enforce the promise that Moore would not be charged with murder or homicide because the prosecutor explicitly gave them permission to do so. *See* Tr. p. 27 (Detective Stille: "[The prosecutor] agreed prior to [us] going into the interview that she would not charge Mr. Moore with any sort of homicide [or] murder[] charge.").

10

State has proved that Moore's statements were voluntarily given by a preponderance of the evidence; therefore, the trial court did not abuse its discretion in admitting them into evidence.

## II. Sufficiency of the Evidence

Next, Moore contends that that the evidence is insufficient to support his conviction for Class B felony dealing in a schedule I controlled substance because he did not possess heroin and therefore could not have delivered it to Alan. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

In order to convict Moore of Class B felony dealing in a schedule I controlled substance as charged in this case, the State had to prove that Moore knowingly delivered a controlled substance classified in schedule I, specifically heroin. Ind. Code § 35-48-4-2(a)(1); Appellant's App. p. 13. "Delivery" is defined as "(1) an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." Ind. Code § 35-48-1-11. Heroin is a schedule I controlled substance. Ind. Code § 35-48-2-4(c).

11

We agree with Moore that in order for the State to prove that he delivered heroin to Alan, the State had to show that he first possessed it. *See Watson v. State*, 839 N.E.2d 1291, 1293 (Ind. Ct. App. 2005). Possession of contraband may be established by proof of either actual or constructive possession. *Houston v. State*, 997 N.E.2d 407, 409-10 (Ind. Ct. App. 2013). Actual possession occurs when a person has direct physical control over the item. *Id.*

The evidence most favorable to the verdict demonstrates that Moore had direct physical control over the syringe containing heroin. When the group first returned to Dayna's house from Jack's Lounge, Alan asked if someone would inject him with heroin. Moore volunteered. Although Dayna did not see Moore actually inject Alan with heroin, she saw Moore kneel next to Alan before she blacked out. Kristy also saw Moore with a syringe. Additionally, Moore admitted to the detectives that Gerald filled the syringe with heroin and then handed it to him just before he injected Alan in his right arm. Joint Ex. p. 41.

However, Moore argues that even if he did hold the syringe containing heroin in his hand, his possession was merely transitory and therefore not sufficient to prove possession. *See Loudermilk v. State*, 523 N.E.2d 769, 771 (Ind. Ct. App. 1988). However, we find *Loudermilk* distinguishable. In that case, a police officer saw a group of four people leave a party in Bloomington and then stop at a street corner. An unidentified member of the group removed a leather case from a nearby parked car. A clear plastic bag containing marijuana was removed from the case and passed around the four people. Loudermilk touched the bag only once, holding it for approximately seven seconds before passing it to

12

the next person.  *Id.* at 770.  We concluded that the State did not prove possession because it did not prove that Loudermilk owned the car from which the leather case was taken or the leather case that contained the bag of marijuana.  In addition, the State did not prove that Loudermilk was the one who removed the case from the car.  We explained that something more than holding a bag of marijuana for a brief period is necessary to sustain a conviction for possession.  *Id.* at 771.

Here, however, the evidence shows that Moore did more than hold a syringe of heroin for a few seconds.  Moore demonstrated that he had direct physical control over the heroin.  He instructed Gerald not to put too much heroin in the syringe because Alan was a first-time user.  He then took the syringe from Gerald and injected the heroin into Alan's body.  The evidence is sufficient to prove that Moore had actual possession of the heroin and delivered it to Alan by injection.  We therefore affirm Moore's conviction for Class B felony dealing in a schedule I controlled substance.

### III. Inappropriate Sentence

Finally, Moore contends that his twenty-year sentence is inappropriate.  Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).  "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement

of the sentencing statutes, but not to achieve a perceived 'correct' result in each case."

*Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

A person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5. The trial court sentenced Moore to the maximum term of twenty years.

The nature of this offense is serious. Moore injected heroin into Alan, a first-time user, and Alan died. Although Moore admits that Alan's death is tragic, he deflects responsibility by saying that "deaths such as [Alan's] are endemic to the culture of drug use." Appellant's Br. p. 24. Even though Moore did not supply the heroin that killed Alan—Gerald did—Moore volunteered to inject Alan.

Moore's character does not fare much better. He has three misdemeanor convictions (one for possession of marijuana and two OWIs) and one felony conviction for possession of cocaine that was later reduced to a misdemeanor. In addition, each of his convictions has a probation-revocation proceeding associated with it. As a condition of remaining free on bond awaiting trial in this case, Moore promised to refrain from all alcohol and controlled-substance use. But after the jury verdict in this case, Moore tested positive for marijuana and methamphetamine. Moore's history of violating probation and bond—and consuming drugs during his own trial—shows disrespect for the law, even when granted leniency. In addition, Moore has a long and varied history of drug abuse and has done little to address it. Appellant's App. p. 163. Although Moore argues that "there is nothing in

the record to indicate that [he] was an individual who was transporting drugs into the community for the purpose of reselling them to others," Appellant's Br. p. 24, the record shows that earlier on the day of Alan's death, Moore drove Gerald to Louisville (and on other occasions as well) so that Gerald could buy heroin, Tr. p. 286; Joint Ex. p. 67-69. Again, Moore attempts to minimize his role in this tragedy.

Moore has failed to persuade us that his twenty-year sentence for Class B felony dealing in a schedule I controlled substance is inappropriate.

Affirmed.

NAJAM, J., and BROWN, J., concur.