## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 15 2016, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark R. McKinney
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Reginald D. Ivy, Jr., <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | February 15, 2016 <br><br> Court of Appeals Case No. <br> 18A05-1506-CR-690 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Thomas A. Cannon, Jr., Judge <br><br> Trial Court Cause No. <br> 18C05-1306-FA-5 |

**Brown, Judge.**

[1] Reginald D. Ivy, Jr., appeals the revocation of his direct commitment to electronic home detention. Ivy raises three issues which we revise and restate as:

I. Whether he was properly advised of the terms of his placement;

II. Whether the trial court erred by admitting hearsay testimony at the revocation hearing; and

III. Whether the evidence is sufficient to support the revocation of Ivy's home detention.

We affirm.

## Facts and Procedural History

[2] On June 20, 2013, the State charged Ivy with two counts of dealing in cocaine as class A felonies, possession of cocaine as a class A felony, dealing in cocaine as a class B felony, and maintaining a common nuisance as a class D felony.

[3] On December 15, 2014, Ivy signed a written advisement and waiver of rights form. That same day, Ivy and the State entered into a plea agreement in which Ivy agreed to plead guilty to possession of cocaine and dealing in cocaine as class B felonies and the State agreed to dismiss the remaining charges. The parties agreed that Ivy would receive concurrent sentences of eight years with six years executed and two years suspended for each count and that the executed portion of the sentences be served as a direct commitment to electronic home detention.

[4] On March 2, 2015, the court accepted the plea agreement and sentenced Ivy pursuant to the plea agreement. That same day, Ivy signed a document titled

Delaware County Community Corrections Home Detention Rules and initialed next to various rules under the heading "Agreement and Rules of Home Detention." State's Exhibit 1. Rule 20, which Ivy initialed, states: "NEW ARRESTS/CHARGES: Any new violations of the law while on Home Detention may be cause for revocation of your suspended sentence or placement on Home Detention." *Id.* Before Ivy's signature, the document states:

> I have read the rules of Home Detention. I understand all of these rules, and agree to abide and comply with each of them. I understand if my placement is CTP or Direct Commitment failure to comply with these rules will result in sanctions up to and including **REMOVAL OF CREDIT OR CLASS TIME**.

*Id.* Jordan King, an officer at the Delaware County Community Corrections, "went through" the terms with Ivy, including that he agreed to comply with and abide by each of the rules and that his failure to comply would result in sanctions. Transcript at 12.

[5] At some point, Muncie Police Investigator Daxton Lovell received information from his confidential informant (the "C.I.") that Ivy was dealing cocaine and that he drove a silver Jeep Cherokee. Investigator Lovell logged on to the local database at the Muncie Police Department and discovered that a silver Jeep Cherokee was registered to Ivy.

[6] On March 8, 2015, Investigator Lovell observed Ivy's Jeep, positioned his undercover vehicle to have a visual on Ivy's vehicle, contacted other

investigators, and observed Ivy exit his vehicle and enter a house. Meanwhile, Muncie Police Investigator Mike Nickens performed a "thorough search" of the C.I.'s person and vehicle. *Id.* at 16. The search of the C.I. and the vehicle took approximately fifteen minutes. Investigator Nickens provided the C.I. with $300 worth of previously photocopied buy money and an electronic recording device and transmitter.

[7] The C.I. received a phone call and then proceeded to the area of Streeter and Wolfe. Investigator Nickens followed the C.I.'s vehicle until other investigators advised him that they had a visual of the C.I. Investigator Scott O'Dell maintained visual contact with the C.I. to Wolfe Street and Streeter. Meanwhile, Investigator Lovell observed Ivy exit the residence and enter the backseat of a small four door green vehicle.

[8] At some point, the C.I.'s vehicle and the green vehicle approached each other, Ivy exited the green vehicle and walked around the rear and then directly to the front driver's seat of the C.I.'s vehicle. Investigator Brent Brown observed Ivy approach the driver's side window of the C.I.'s vehicle, some "hand movements," and Ivy turn around less than five seconds later and enter the rear seat of the green vehicle before it pulled away. *Id.* at 63.

[9] The green vehicle drove several blocks and stopped near the silver Jeep Cherokee, and Ivy exited the green vehicle and attempted to enter the Jeep Cherokee. Investigators Brown and O'Dell stopped their vehicles, identified themselves as police officers, and ordered Ivy to the ground. Investigator

O'Dell put Ivy on the ground and handcuffed him, and Investigator Brown ordered the two occupants of the green vehicle to exit and placed them in handcuffs.

[10] After handcuffing Ivy, Investigator O'Dell observed some car keys and a small baggie on the ground next to Ivy that contained a green plant-like substance that field tested positive for marijuana. Investigator O'Dell then searched Ivy and found several different stacks of U.S. currency totaling $695 in his pockets along with his driver's license. Investigator Lovell determined that the serial numbers on certain bills totaling $260 recovered from Ivy matched the serial numbers of the photocopied buy money.[1] Investigator O'Dell searched the green vehicle and found no controlled substances, monies, or weapons.

[11] The C.I. then met with Investigator Nickens and turned over a clear corner plastic baggie containing 1.3 grams of cocaine. Ivy was arrested for dealing cocaine as a level five felony and possession of marijuana as a class B misdemeanor.

[12] On March 17, 2015, the State filed a Petition for Warrant on Revocation and Executed Sentence on Violation of Terms of Direct Commitment and alleged that Ivy failed to comply with the court's order by being arrested under cause number 18C02-1503-F4-2 for dealing in cocaine as a level 5 felony and

---

[1] Investigator O'Dell testified that the forty dollars in buy money may have gone missing because the money began to blow away at the scene of Ivy's arrest.

possession of marijuana as a class B misdemeanor in violation of Rule 20 of his conditions of electronic home detention.

[13] On April 28, 2015, the court held a fact finding hearing. Investigators Nickens, Lovell, Brown, and O'Dell testified to the foregoing. Jennifer Davis, the Home Detention Supervisor at Delaware County Community Corrections, testified that she handles all the intakes of people who are sentenced to the program, that Ivy signed the rules of home detention, and that Jordan King was present and went through the terms with him including that he agreed to comply and abide by each of the rules and that his failure to comply would result in sanctions. When asked how she knew that Ivy signed the rules of home detention, she testified that she was not there on March 2nd, but "when I returned I completed the file, his rules of home detention were signed in there and he was placed on day reporting and assigned a case manager." *Id.* at 9.

[14] Without objection, Investigator Nickens testified that Investigator Lovell received information from the C.I. that he would be able to purchase cocaine from Ivy. On cross-examination, Investigator Nickens testified that he did not have the C.I. remove his shoes and that while he checked around the top of the C.I.'s socks, the socks were not removed, and he did not look inside the C.I.'s underwear. At one point, Investigator Nickens testified that the C.I. stated that the C.I. purchased the substance in the baggie, and Ivy's counsel objected on the basis of hearsay. The court overruled the objection, and Investigator Nickens testified that the C.I. stated that the C.I. had purchased the substance in the baggie from Ivy in exchange for the buy money.

During direct examination, Investigator Lovell testified that he was informed by the C.I. that Ivy drove a silver Jeep Cherokee, and Ivy's counsel stated: "I'd like to just show a continuing objection to the information received from" the C.I. *Id.* at 31. The court noted and overruled the objection. During the direct examination of Investigator Brown, the prosecutor asked if it would be fair to say that the C.I. told Investigator Lovell that they had to move the meeting location, Ivy's counsel objected, and the court sustained the objection.

On April 29, 2015, the court entered an order finding by a preponderance of the evidence that Ivy violated the terms of his sentence and Rule 20 of the electronic home detention rules by committing new crimes. On May 19, 2015, the court held a sentencing hearing and revoked Ivy's placement and sentenced him to the Department of Correction for six years followed by two years of supervised probation.

## *Discussion*

### I.

The first issue is whether Ivy was properly advised of the terms of his placement. He argues that the State failed to offer any admissible evidence that he was advised of the terms of his placement prior to the alleged violation. He asserts that the Rules of Home Detention were admitted despite the fact that Davis admitted she was not present to observe whether or not Ivy personally signed them and had no firsthand knowledge of who actually signed the rules.

The State argues that Ivy was advised of the terms and conditions of his placement and that he never claims he was not given notice.

[18] Generally, it is error for a probation revocation to be based upon a violation for which the defendant did not receive notice. *Bovie v. State*, 760 N.E.2d 1195, 1199 (Ind. Ct. App. 2002) (citing *Hubbard v. State*, 683 N.E.2d 618, 622 (Ind. Ct. App. 1997)). However, such error may be harmless. *Id.*

[19] The record reveals that Davis, the Home Detention Supervisor at the Delaware County Community Corrections, testified Ivy signed the rules of home detention. While she testified that she was not present when Ivy signed the document, she testified that Jordan King, her fellow officer, went through the terms with Ivy including that he agreed to comply and abide by each of the rules and that his failure to comply would result in sanctions. Rule 20, which Ivy initialed, states: "NEW ARRESTS/CHARGES: Any new violations of the law while on Home Detention may be cause for revocation of your suspended sentence or placement on Home Detention." State's Exhibit 1. Before Ivy's signature, the document states:

> I have read the rules of Home Detention. I understand all of these rules, and agree to abide and comply with each of them. I understand if my placement is CTP or Direct Commitment failure to comply with these rules will result in sanctions up to and including **REMOVAL OF CREDIT OR CLASS TIME**.

*Id.* Based upon the record, we conclude that Ivy received notice of the conditions of his home detention.

[20] We also observe that the State's petition for revocation alleged that Ivy was arrested and charged for dealing in cocaine and possession of marijuana. This court has previously held that a trial court has authority to revoke a placement in community corrections when the defendant commits a new crime while in community corrections even where such a condition was not expressly made a term of community corrections. *See Toomey v. State*, 887 N.E.2d 122, 125 (Ind. Ct. App. 2008) (rejecting the defendant's argument that the trial court could not revoke his placement in home detention when he had no notice of the specific terms of home detention and holding that the commission of a crime while in community corrections is grounds for revocation); *Decker v. State*, 704 N.E.2d 1101, 1103 (Ind. Ct. App. 1999) (holding that the commission of a crime while serving time in the community corrections program is always grounds for revocation, even if the sentencing court fails to notify the person of such condition), *trans. dismissed*. Accordingly, reversal is not warranted on this basis.

## II.

[21] The next issue is whether the trial court erred by admitting hearsay testimony at the revocation hearing. Ivy argues that the court should not have admitted the hearsay testimony of the multiple police officers regarding the C.I.'s statements because the court could not make a finding of substantial trustworthiness. He asserts that law enforcement did not testify that the informant had been used before, whether such use resulted in other arrests and/or convictions, whether the informant had provided correct information in the past, or whether an independent police investigation corroborated the C.I.'s statements. He argues

that, without the hearsay testimony, there was insufficient evidence of probative value to support the trial court's determination that he violated the terms of his placement. The State argues that Ivy waived the ability to challenge a good deal of the evidence relating to the statements made by the C.I., that Ivy does not argue fundamental error, and that such an argument fails on the merits.

[22] Indiana Evidence Rule 101(d)(2) allows for the admission of evidence during probation revocation hearings that would not be permitted in a full-blown criminal trial.[2] Yet, "[t]his does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Reyes v. State*, 868 N.E.2d 438, 440 (Ind. 2007), *reh'g denied*. In *Reyes*, the Indiana Supreme Court adopted the substantial trustworthiness test as the means for determining whether hearsay evidence should be admitted at a probation revocation hearing. In applying the substantial trustworthiness test, "'ideally [the trial court should explain] on the record why the hearsay [is] reliable and why that reliability [is] substantial enough to supply good cause for not producing . . . live witnesses.'" *Id.* at 442 (quoting *United States v. Kelley*, 446 F.3d 688, 693 (7th Cir. 2006)). Failure to provide an explanation on the record is not fatal where the record supports such a determination. *Id.*

---

[2] Ind. Evidence Rule 101(d)(2) provides that "[t]he rules, other than those with respect to privileges, do not apply in . . . [p]roceedings relating to extradition, sentencing, probation, or parole, issuance of criminal summonses or warrants for arrest or search, preliminary juvenile matters, direct contempt, bail hearings, small claims, and grand jury proceedings."

[23] We will not reverse an error in the admission of evidence if the error was harmless. *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011). Errors in the admission of evidence are to be disregarded unless they affect the defendant's substantial rights. *Id.* at 1059. In determining the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact-finder. *Id.* Generally, "[t]he improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." *Id.* Accordingly, to determine whether an admission is harmless we must determine whether there is sufficient independent evidence to support the revocation of Ivy's probation. *See Richeson v. State*, 648 N.E.2d 384, 389 (Ind. Ct. App. 1995), *reh'g denied*, *trans. denied*.

[24] As pointed out by the State, Investigator Nickens testified without objection that Investigator Lovell received information from the C.I. that he would be able to purchase cocaine from Ivy. Even assuming that some of the officers' testimony including that the C.I. said that he was contacted by Ivy, that Ivy sold him the baggie of cocaine, and that Ivy drove a silver Jeep Cherokee, were improperly admitted, we conclude that such testimony did not affect Ivy's substantial rights and that any such error would be harmless in light of the other evidence introduced at the hearing. *See Pritchard v. State*, 810 N.E.2d 758, 761 (Ind. Ct. App. 2004) (holding that, even if it could be concluded that it was error for the trial court to admit certain testimony, the error would have been harmless and the defendant was not prejudiced by the admission of the

testimony); *see also Cole v. State*, 970 N.E.2d 779, 784 (Ind. Ct. App. 2012) (holding that an error in the admission of evidence does not justify reversal if the evidence is cumulative of other evidence presented at trial).

## III.

[25] The next issue is whether the evidence is sufficient to support the revocation of Ivy's home detention. A defendant is not entitled to serve a sentence in either probation or a community corrections program. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). "Rather, placement in either is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" *Id.* (quoting *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*). For the purposes of appellate review, we treat a hearing on a petition to revoke a placement in a community corrections program such as home detention the same as we do a probation revocation hearing. *Id.* (citing *Cox*, 706 N.E.2d at 549). The State needs to prove the alleged violations by a preponderance of the evidence. *Id.* We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses. *Id.* If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of home detention, we will affirm its decision to revoke home detention. *Id.* The violation of a single condition of home detention is sufficient to revoke home detention. *See Wilson v. State*, 708 N.E.2d 32, 34 (Ind. Ct. App. 1999).

[26] Ivy argues that the State failed to offer sufficient admissible evidence of probative value to support the revocation. He asserts that the search of the C.I. prior to providing him with the buy money and the transmitter was inadequate to satisfy the requirements of a controlled buy. He also contends that the amount of cocaine was small, that no evidence from the recorder/transmitter was offered into evidence, that the transaction occurred on a dark street, and that no exchange was witnessed by officers. The State argues that the search of the C.I. and the vehicle were both thorough and that the evidence demonstrated that Ivy violated the conditions of his commitment by a preponderance of the evidence.

[27] During cross-examination, Investigator Nickens testified that he conducted a thorough search of the C.I.'s person and vehicle. Ivy's counsel asked Investigator Nickens "[s]tarting with the [C.I.'s] person, describe what a thorough search is, what you did to search the [C.I.]?" Transcript at 23. Investigator Nickens answered:

> Um, started at the feet area, went up each pant leg, checking pockets, around the belt area, around the chest area, any pockets on the shirts, jackets, t-shirts, in the groin area, in the buttocks area, check their mouth, ears, any hats that may be on, inside their socks if need be, a complete search of their person was conducted also, a thorough search of the vehicle starting the driver compartment and moving methodically through over to the passenger compartment, and then starting at a point in the passenger rear, and over to the other side of the vehicle.

*Id.* When asked to again describe the search of the vehicle, Investigator Nickens stated:

> Um, start on the driver compartment, look underneath the seats, in the seat creases, and the floor board, underneath the seat, in between the seats and the dash, the dash, any loose vents inside the compartment, visors, anything loose that can be removed or pulled, same thing going over the passenger side, the glove box, behind the glove box, anything that's loose is pulled and checked, door panels, anything that's loose is pulled and checked, same thing with the backseat, creases, if the seats able to be pulled up . . . pulled up, underneath the seat if it's able to be pulled, and then on the floor or any compartments on the back of the seats is also checked.

*Id.* at 25-26.

[28] Muncie Police Investigator O'Dell, a police officer for twenty-four years and involved in the drug unit for sixteen to seventeen years, observed the search of the C.I. and the C.I.'s vehicle and testified that both searches were thorough. To the extent Ivy cites *Watson v. State*, 839 N.E.2d 1291 (Ind. Ct. App. 2005), we find that case distinguishable. In that case, this Court held that the evidence was insufficient to support a conviction for dealing in cocaine where the confidential informant was not searched prior to the buy and did not testify. 839 N.E.2d at 1293. Unlike in *Watson*, this case involved a thorough search of the C.I. and his vehicle.

[29] Further, Investigator Brown described the interaction between the C.I. and Ivy as follows: "As quickly as [Ivy] approached I saw hand movements, he turned

right around and took the same direct path back to the green vehicle, he got into the rear seat again, and the vehicle pulled away." Transcript at 63. The C.I. then met with Investigator Nickens and turned over a clear corner plastic baggie containing 1.3 grams of cocaine. The police recovered a small baggie containing marijuana on the ground next to Ivy, and $695 from Ivy's pockets, $260 of which matched the serial numbers of the photocopied buy money.

[30] Based on the facts most favorable to the revocation, we conclude that the State presented sufficient evidence from which the court could find by a preponderance of the evidence that Ivy violated the terms of his home detention. *See Kuhfahl v. State*, 710 N.E.2d 200, 201 (Ind. Ct. App. 1999) (holding that the evidence was sufficient to revoke defendant's probation, and the defendant's argument was simply to ask this court to reweigh the evidence and the credibility of the witnesses).

### *Conclusion*

[31] For the foregoing reasons, we affirm the trial court's revocation of Ivy's home detention.

[32] Affirmed.

Kirsch, J., and Mathias, J., concur.