## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 08 2020, 9:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

APPELLANT PRO SE

Paul Parsley
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Paul Parsley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 8, 2020

Court of Appeals Case No.
19A-PC-2262

Appeal from the Fayette Circuit Court

The Honorable Hubert Branstetter, Jr., Judge

Trial Court Cause No.
21C01-1509-PC-730

**Altice, Judge.**

## Case Summary

[1] Following a hearing, the trial court denied Paul Parsley's pro se petition for post-conviction relief. Parsley challenges on appeal the trial court's determination that he did not receive ineffective assistance of trial counsel during his trial for two counts of dealing in a controlled substance, one as a Class A felony and one as a Class B felony.

[2] We affirm.

## Facts & Procedural History

[3] The facts underlying Parsley's convictions were set out as follows in the memorandum decision issued in his direct appeal:

> From January 2011 until June 2011, Cody Tipton worked as a confidential informant for the RUFF Drug Task Force. Tipton approached RUFF Drug Task Force member David Joseph Laughlin, II, of the Fayette County Sheriff's Department, with a list of people from whom he offered to attempt to make controlled buys, in exchange for payment as a confidential informant, and to potentially have felony charges filed against him dismissed. Although the task force typically researched the criminal history of potential informants prior to proceeding with a controlled buy, Tipton was immediately allowed to make a controlled buy because Officer Laughlin was familiar with Tipton's background. Officer Laughlin had known Tipton for approximately seven or eight years having met while Tipton was a high school student and Officer Laughlin was a school security officer. During the time Tipton served as a confidential informant, he made approximately thirty-six controlled buys.

> One of the people on Tipton's list was Parsley, an individual Officer Laughlin had known for a number of years. On January

14, 2011, Tipton called Parsley and told him that he needed a fix for a backache. Officer Laughlin met Tipton at Baptist Temple where Tipton and his vehicle were searched before and after he was equipped with a recording device. Tipton then drove to Parsley's grandfather's house, where Parsley was living, while Officer Laughlin followed behind. The house, which was occupied by Parsley and other family members, was located at the intersection of 11th Street and Grand Avenue.

When Tipton arrived at the house, he exited his own vehicle and got into the backseat of another vehicle driven by Parsley. Also present in the car, sitting in the front passenger seat, was Stephanie Ketcham, Parsley's girlfriend. Parsley drove his vehicle down a nearby alley on 12th Street, where he bought three oxycodone pills weighing 30 milligrams each. While Parsley was purchasing the drugs, Tipton and Ketcham discussed Parsley specifically and Ketcham's concern about Parsley's lifestyle. After Parsley returned to and entered his vehicle, he handed Tipton what Ketcham identified as oxycodone pills. Parsley then returned to his grandfather's house, Tipton got back into his own vehicle, and Officer Laughlin and Tipton returned to Baptist Temple. Tipton had the three oxycodone pills and told Officer Laughlin, for purposes of making a post-buy statement, about the events that had taken place.

Later, on May 18, 2011, Tipton met with Officer Laughlin at Smalley's Pond to conduct another controlled buy from Parsley. On this occasion, the same search procedure was followed prior to and after equipping Tipton with recording equipment. Tipton drove to Jennifer Bramer's home to meet Parsley. Tipton asked Parsley for Lortabs, also known as oxycodone hydrochloride, and they agreed to meet at Parsley's grandfather's house. While Tipton drove to Parsley's grandfather's house, Parsley in another car went to another house to retrieve the Lortabs. Parsley arrived with the drugs and handed them to Tipton. Tipton then left Parsley's house and met with investigating officers at a nearby

ballpark where he gave them the evidence, five Lortabs, ten milligram pills, and was searched for contraband.

Subsequent laboratory analysis confirmed that the pills Parsley delivered to Tipton contained oxycodone. Mike Bottomley, Superintendent of Parks and Recreation for the City of Connersville, testified that Industrial Park was a neighborhood park maintained by the city and included a playground, basketball courts, and a softball diamond. Fayette County Surveyor Jerry Gobin measured the distance between Industrial Park and Parsley's grandfather's house. He found that it was 870 feet from the southwest corner of the lot on which the house sits to the eastern edge of Industrial Park. He further testified that the entire lot on which Parsley's grandfather's house sits is within 1,000 feet of Industrial Park.

The State charged Parsley with the two offenses, and, after a jury trial, he was convicted of one count of dealing in a controlled substance within 1000 feet of a park as a Class A felony, and dealing in a controlled substance as a Class B felony. The trial court sentenced Parsley to forty years for the Class A felony offense, and to a twelve-year concurrent sentence for the Class B felony offense. Parsley now appeals.

*Parsley v. State*, No. 21A01-1402-CR-69 (Ind. Ct. App. October 16, 2014) (footnote omitted), *trans*. *denied*.

[4] Parsley appealed his convictions and sentence, arguing that the evidence was insufficient and that his sentence was inappropriate. On October 16, 2014, this court affirmed Parsley's convictions and his forty-year sentence. *See id*.

[5] On September 3, 2015, Parsley filed a pro se petition for post-conviction relief. This petition was amended a number of times, with the final amendment being

on January 24, 2019. A public defender entered an appearance for Parsley shortly after the initial filing but in March 2017 withdrew pursuant to Ind. Post-Conviction Rule 1(9)(c). The trial court held a post-conviction evidentiary hearing on April 26 and May 10, 2019. Thereafter, on July 15, 2019, the court issued an order denying Parsley's petition. Following an unsuccessful motion to correct error, Parsley now appeals.

## Standard of Review

Post-conviction proceedings are civil proceedings in which a petitioner may present limited collateral challenges to a conviction and sentence. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). The petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Id*.

On appeal from the denial of post-conviction relief, the petitioner "faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court." *Jent v. State*, 120 N.E.3d 290, 92-93 (Ind. Ct. App. 2019), *trans. denied*. We accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. *Id*. The petitioner must convince us that there is "no way within the law that the court below could have reached the decision it did." *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018) (quoting *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002)), *reh'g denied* (2019), *cert. denied*, 139 S. Ct. 2749 (2019)); *see also Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013) ("To prevail from the denial of post-conviction relief, a

petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.").

[7] Further, where post-conviction relief is premised on alleged ineffective assistance of counsel, we evaluate the claim under the two-part test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, Parsley must show: 1) that counsel's performance was deficient based on prevailing professional norms; and 2) that the deficient performance prejudiced the defense. *Id.*; *Weisheit*, 109 N.E.3d at 983.

> In analyzing whether counsel's performance was deficient, the Court first asks whether, "'considering all the circumstances,' counsel's actions were 'reasonable [ ] under prevailing professional norms.'" *Wilkes*, 984 N.E.2d at 1240 (quoting *Strickland*, 466 U.S. at 668 []). Counsel is afforded considerable discretion in choosing strategy and tactics, and judicial scrutiny of counsel's performance is highly deferential. *Id.*

> To demonstrate prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694 [].

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Stevens*, 770 N.E.2d at 746. Counsel is afforded considerable discretion in choosing strategy and tactics and these decisions are entitled to deferential review. *Id.* at 746-47 (citing *Strickland*, 466 U.S. at 689 []). Furthermore,

isolated mistakes, poor strategy, inexperience and instances of bad judgment do not necessarily render representation ineffective. *Id.* at 747 (citations omitted).

*Weisheit*, 109 N.E.3d at 983-84.

## Discussion & Decision

Parsley claims that his trial attorney was ineffective for failing to: 1) adequately consult with him and prepare for trial; 2) file a motion to suppress or dismiss due to inadequate procedures followed during the controlled buys; 3) challenge the presentation of false testimony; 4) raise the defense of entrapment and 5) properly argue available mitigation at sentencing. We will address each in turn.

Parsley initially claims that his trial counsel was ineffective for failing to adequately consult with him prior to trial or otherwise prepare for trial. Parsley does not provide any cogent argument in this regard or citations to record or relevant authority and, in fact, he asserts facts that are not in the record. Moreover, the evidence most favorable to the judgment reveals that counsel could not locate Parsley for about a year during the pendency of the case. Counsel testified that his office sent Parsley four letters to which Parsley never responded. At some point, Parsley did come into counsel's office twice, once to view the buy recordings and another time to discuss a plea offer. Counsel also visited Parsley once in jail, where he was incarcerated on other charges, prior to the jury trial. Further, counsel testified that in preparing for trial, he would have reviewed all the discovery, including narrative reports and the buy

recordings, prior to trial, and he opined that it is not always necessary to conduct depositions. Parsley has failed to establish that counsel was deficient in this regard and has not shown what additional information counsel could have garnered from further consultation or investigation to aid in Parsley's defense. *See Coleman v. State*, 694 N.E.2d 269, 274 (Ind. 1998) ("Allegations that counsel failed adequately to consult with the appellant or failed to investigate issues and interview witnesses do not amount to ineffective assistance absent a showing of what additional information may have been garnered from further consultation or investigation and how that additional information would have aided in the preparation of the case.").

[10] The bulk of Parsley's argument on appeal centers on a claim that the procedures used in the controlled buys were "grossly inadequate". *Appellant's Brief* at 11. According to Parsley, the buys were "without the slightest doubt, the absolute worst controlled buys in history, bar none." *Id*. at 13. Parsley suggests that trial counsel was ineffective because he failed to move for dismissal of all charges, "move[] to suppress the entirety of the alleged controlled buys," or advise the jury of the inadequacies. *Id*. at 16.

[11] Initially, we observe that Parsley has mischaracterized the procedures utilized in the controlled buys. Detective Laughlin's testimony indicates that Tipton, the confidential informant, was searched before and after each buy, as was Tipton's vehicle. Tipton also had a video recording device that was recording throughout the duration of both controlled buys and recorded conversations and exchanges between Tipton and Parsley. Although there were periods of

time during the buys where Detective Laughlin lost sight of Tipton while Tipton was traveling between locations, the recording continued throughout.

[12] During the first controlled buy, Tipton did get out of his vehicle and was away from the recording device for about three minutes after the exchange with Parsley and before meeting with Detective Laughlin, who was delayed meeting Tipton. Parsley suggests that during this time, Tipton could have obtained oxycodone pills from a third party and then switched them with the pills he had just received from Parsley in order to set up Parsley. The evidence favorable to the judgment, however, reveals that Ketchum testified that she witnessed the drug exchange between Parsley and Tipton and that it involved "Roxy 30s," which Detective Laughlin testified was a street name for a form of oxycodone. *Trial Transcript* at 148. Further, Tipton testified that he did not buy pills from anyone else but Parsley during the first controlled buy and that he believed he was being monitored by police the entire time.

[13] Parsley offers no valid legal basis for dismissal of the charges against him or a motion to suppress based on the procedures utilized in the instant controlled buys. He simply directs us to cases involving whether an affidavit based on a controlled buy provided probable cause for issuance of a search warrant. *See Flaherty v. State*, 443 N.E.2d 340 (Ind. Ct. App. 1982) (finding lack of probable cause for a search warrant where informant's reliability had not been established and police officer failed to state in affidavit whether officer observed informant enter and leave defendant's apartment); *Whirley v. State*, 408 N.E.2d 629 (Ind. Ct. App. 1980) (holding that control exercised over buy was adequate

to serve as basis for issuance of search warrant, notwithstanding fact that informant was out of officer's sight for 20 seconds). These cases are inapposite because there was no search warrant involved in this case. Further, the jury had before it not only the testimony of Detective Laughlin, but also the testimony of Tipton and Ketchum, as well as the buy recordings and other relevant evidence. Ultimately, it was the jury's duty to weigh the evidence and determine witness credibility. *See Ramsey v. State*, 853 N.E.2d 491, 502 (Ind. Ct. App. 2006) (where both the informant and the detective testified, "the jury was able to determine for itself whether there were sufficient controls in place during the buys"), *trans. denied*; *see also Maish v. State*, 916 N.E.2d 918, 923-24 (Ind. Ct. App. 2009) (finding sufficient evidence where informant, who had not been searched prior to the drug buy, actually testified at trial); *Hudson v. State*, 462 N.E.2d 1077, 1082-83 (Ind. Ct. App. 1984) (holding that evidence supported jury's verdict for dealing in a controlled substance and noting that the sole uncorroborated testimony of an informant-buyer is sufficient to convict, despite any arguable inadequacies in the control of the buy).

[14] Here, defense counsel thoroughly cross-examined the witnesses regarding the buy procedures and elicited testimony that Detective Laughlin lost sight of Tipton on several occasions, that Detective Laughlin did not search every area in which Tipton could have possibly secreted drugs, and that the searches were not recorded. Counsel even had Detective Laughlin acknowledge the possibility that Tipton "could have had drugs in the car or on his person" that were not discovered during the pre-buy search. *Trial Transcript* at 72. Counsel

actively questioned the credibility of both Tipton and Ketcham throughout the trial and argued to the jury that they should not be believed, especially in light of the faulty buy procedures. In sum, Parsley has not established that counsel performed deficiently with respect to challenging the controlled buy procedures.

[15] Next, Parsley asserts that trial counsel failed to challenge certain testimony of Ketcham and Detective Laughlin that he claims was perjurious. Upon thoroughly reviewing the record, we find no support for Parsley's claims that these witnesses offered perjured testimony, and he provided no such evidence at the post-conviction hearing. In fact, Parsley did not even raise this claim as it relates to Detective Laughlin in his petition for post-conviction relief, which results in waiver of the issue on appeal. *See Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal."), *cert. denied*, 535 U.S. 1061 (2002). With respect to Ketcham, trial counsel cross-examined her, establishing that she did not actually see money exchanged, and argued to the jury that she lacked credibility. Parsley has failed in his burden to show deficient performance and resulting prejudice with regard to the handling of Ketcham's testimony.

[16] Parsley also argues that trial counsel was ineffective for failing to pursue an entrapment defense to lower his Class A felony conviction to a Class B felony. He properly observes that Ind. Code § 35-48-4-16 provides defenses to a charge of selling narcotics that is elevated based on being near school (or family housing). Relevant here, subsection (c) of the statute provides a defense to the

elevated charge where the location at which the defendant sold the drugs was selected "at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer."[1] Parsley argues that trial counsel should have argued for reduction of his Class A felony because Tipton, an agent of Detective Laughlin, requested that the second buy occur at Parsley's residence, which happened to be within 1000 feet of a school.

[17] The difficulty with Parsley's argument is that there is no evidence in the trial record that Tipton chose the location of the buy. Parsley suggests that on the recording of the buy, State's Exhibit 4, after Tipton and Parsley left Bramer's home in separate vehicles, Tipton can "clearly be heard" directing Parsley in a phone call to meet him at Parsley's home. *Appellant's Brief* at 14. We have closely listened to State's Exhibit 4 multiple times and can discern no such direction from Tipton regarding the location of the drug transfer. Further, we find notable that the transaction occurred not at some random location but outside Parsley's own residence, which Parsley went directly into after giving the drugs to Tipton. Finally, we note that at the end of the buy recording, Tipton expressly informed Detective Laughlin that Parsley told Tipton to meet at Parsley's house. Parsley's contrary testimony at the post-conviction hearing was self-serving and does not establish that trial counsel was ineffective by not raising a defense under I.C. § 35-48-4-16(c).

---

[1] At the time of Parsley's offense, this provision was found in subsection (c). The statute was amended in 2014 and now sets out this language in subsection (c)(1).

[18] Finally, Parsley asserts that trial counsel provided ineffective assistance at his sentencing hearing by failing to argue "readily available mitigation." *Appellant's Brief* at 10. But he does not indicate what mitigating evidence was overlooked by counsel or even set out or discuss the aggravating and mitigating factors found by the trial court. Parsley's sentence was affirmed on direct appeal, and he did not assert in his petition for post-conviction relief that counsel was ineffective with respect to the presentation of mitigating evidence at sentencing. Accordingly, this ground is not available on appeal. *See Allen*, 749 N.E.2d at 1171.

[19] In sum, the trial court did not err in determining that trial counsel was not ineffective. Thus, we affirm the denial of Parsley's petition for post-conviction relief.

[20] Judgment affirmed.

Riley, J. and May, J., concur.