

**FILED**

Feb 13 2019, 10:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Angelus T. Kocoshis
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Dusten T. Vance, <br> *Appellee-Defendant.* | February 13, 2019 <br><br> Court of Appeals Case No. 18A-CR-1746 <br><br> Appeal from the Delaware Circuit Court <br><br> The Honorable Kimberly S. Dowling, Judge <br><br> Trial Court Cause No. 18C02-1806-F5-92 |

**Bailey, Judge.**

# Case Summary

[1]     The State of Indiana appeals the trial court's suppression of evidence found

during a search of the residence of Dusten Vance ("Vance"), based upon the

trial court's determination that the search warrant was issued without probable

cause. The State contends that the warrant was supported by probable cause developed in a series of controlled buys and that, even if probable cause was lacking, the officers acted in good faith and the exclusionary rule should not apply. We affirm.

## Facts and Procedural History

[2] During April of 2018, Investigator Tyler Parks of the Delaware County Sheriff's Office ("Officer Parks"), assisted by a confidential informant ("CI"), was involved in three state-sponsored buys of cocaine. On April 13, April 20, and April 23, 2018, CI was searched and provided with photocopied money. On each occasion, CI contacted an individual described by law enforcement as the "Target." (Tr. at 17.) On the first occasion, Target went to a hotel before providing CI with cocaine.[1] On the second occasion, Target went to a residence before providing CI with cocaine.

[3] On the third occasion, Target was picked up at a residence and driven to a street corner, where he exited the vehicle and began to walk north. Target was under police surveillance at that time, but the visual surveillance was interrupted for a short time. When visual surveillance was restored, officers observed Target leaving Vance's residence. Target provided CI with 1.5 grams

---

[1] An undercover officer was providing transportation to Target on this occasion. On the second and third occasions, CI was providing transportation to Target.

of cocaine. Target was then taken back to the residence where he had been picked up.

[4] Officer Parks executed an affidavit of probable cause for a search warrant of an address on Turner Street. He stated that "This house has an occupant of Dustin [sic] Vance aka (dustball)." (App. Vol. II, pg. 44.) The affidavit represented that members of the Delaware County Narcotics Unit had conducted "controlled cocaine purchases" and these were "from the same unnamed target." (*Id.* at 43-44.) The search warrant for Vance's residence was granted and, upon its execution, officers found cocaine and marijuana.

[5] The State charged Vance with Possession of Cocaine[2] and Maintaining a Common Nuisance.[3] Vance moved to suppress the evidence obtained during the execution of the search warrant, alleging that material facts had been omitted from the affidavit for a search warrant and the warrant was unsupported by probable cause. At the suppression hearing, conducted on July 5, 2018, Vance elicited evidence to show that he was not Target and Target had not been searched as part of the state-sponsored buys. Vance argued that the affidavit for the search warrant omitted this material information and that the State had, in fact, conducted what was "really an uncontrolled buy." (Tr. at 32.)

---

[2] Ind. Code § 35-48-4-6(a).

[3] I.C. § 35-45-1-5.

On July 6, 2018, the trial court issued its suppression order. Having found that Target was never searched, the trial court concluded:

> [T]he officers had no knowledge of whether the target had the drugs on him when he entered into or exited from the locations to which he was directing the CI.

> The target simply entering into a location does not establish that, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found.

(App. Vol, II, pg. 85.) The State dismissed the charges against Vance, without prejudice, and brought this appeal pursuant to Indiana Code Section 35-38-4-2(5).[4]

# Discussion and Decision

Because the request for a warrant is necessarily made *ex parte*, the most basic notions of due process require that an attack of a search warrant affidavit be permitted. *Watt v. State*, 412 N.E.2d 90, 95 (Ind. Ct. App. 1980). Here, Vance attacked the probable cause affidavit as misleading because no controlled buy had, in fact, been conducted. He contended that the remaining asserted facts (Target had exited Vance's residence before giving CI cocaine and the residence

---

[4] The State is permitted to appeal from "an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment." *Id.*

had previously been associated with illicit drugs) did not amount to probable cause to support the search of his residence. The trial court conducted an evidentiary hearing and agreed with Vance that police had conducted inadequate controlled buys, in that Target had not been searched. Based upon this factual development, the trial court found a lack of probable cause and granted Vance's motion to suppress.

[8] We have recognized:

> If a defendant establishes by a preponderance of the evidence that "a false statement knowingly and intentionally, or with a reckless disregard for the truth, was included by the affiant in the warrant affidavit, … and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

*Stephenson v. State*, 796 N.E.2d 811, 815 (Ind. Ct. App. 2003) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (omission original to *Stephenson*)), *trans. denied*.

[9] We review a trial court's ruling on a motion to suppress under a standard similar to that of other sufficiency issues, that is, whether, without reweighing the evidence, there is "substantial evidence of probative value that supports the trial court's decision." *McIlquham v. State*, 10 N.E.3d 506, 511 (Ind. 2014) (citing *State v. Richardson*, 927 N.E.2d 379, 385 (Ind. 2010)). We consider evidence favorable to the trial court's ruling and "substantial uncontradicted

evidence to the contrary." *Id.* (citing *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006)). If the trial court made findings of fact, they are reviewed only for clear error. *Id.* However, the ultimate ruling as to the constitutionality of a search is a legal conclusion that we review de novo. *Id.*[5]

[10] The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects citizens from unreasonable searches and seizures, and demands that no search warrant be issued unless it is supported by probable cause. *Cheever-Ortiz v. State*, 825 N.E.2d 867, 871-72 (Ind. Ct. App. 2005). Probable cause is a fluid concept, which is decided based upon the facts of each case. *Id.* at 872. "Probable cause to search premises is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Esquerdo v. State*, 640 N.E.2d 1023, 1019 (Ind. 1994). Probable cause requires more than a prima facie showing. *Fry v. State*, 25 N.E.3d 237, 244 (Ind. Ct. App. 2015).

[11] In this case, narcotics officers had been working with CI, who in turn contacted Target. Target was transported to, or near, three different locations on three different occasions. Target then supplied cocaine to CI. It is not known

---

[5] We disagree with the dissent's contention that we utilize an inappropriate standard of review. Although *McIlquham* did indeed involve a warrantless search, the ruling on review was – as in this case – a trial court's ruling upon a motion to suppress. In *Methene v. State*, 720 N.E.2d 384, 387 (Ind. Ct. App. 1999), we applied the "standard similar to other sufficiency matters" to review a ruling on a motion to suppress a residential search warrant.

whether Target had cocaine on his person prior to visiting any of those locations, because he, unlike the CI, was never searched. It is not known whether Target acquired cocaine near the Turner Street residence he was seen exiting, since visual surveillance was interrupted. Nevertheless, the State claimed that the third transaction was part of a series of "controlled buys."

[12] "A properly conducted controlled buy will permit an inference the defendant had prior possession of a controlled substance." *Watson v. State*, 839 N.E.2d 1291, 1293 (Ind. Ct. App. 2005). A controlled buy occurs when an undercover police officer or a private citizen acting as an agent of the police under strict police supervision and control purchases illegal drugs from a dealer. A controlled buy has been described as follows:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Mills v. State*, 177 Ind. App. 432, 435, 379 N.E.2d 1023, 1026 (1978).

[13] In *Watson*, we observed:

> Presumably, the pre-buy search establishes the person making the purchase for the police does not have contraband prior to the transaction with the target. Surveillance during the transaction

> establishes the target as the source of the contraband and excludes other sources of contraband. Thus, any contraband discovered during a search after the transaction is attributable to the target of the controlled buy.

839 N.E.2d at 1294.

[14] The key to the controlled buy is that the police are always in control of the situation. But the instant circumstances were not those of a previously-searched buyer entering a residence. Police did not maintain strict control in this alleged tri-level (buyer-dealer-source) transaction where the alleged middle-man, who was not searched and did not act as an agent of police, moved about on his own volition and police surveillance was interrupted. And although the cocaine ultimately produced would arguably have been "attributable to the target," *see id.*, the sole connection between Target and Vance's residence, the premises to be searched, was that Target was seen leaving the residence. Viewing someone exit a residence would not lead a reasonable person to "believe that a search of those premises will uncover evidence of a crime." *Esquerdo*, 640 N.E.2d at 1019. The search warrant, not supported by probable cause, was invalid under the Fourth Amendment.

[15] However, that does not end our inquiry. The State asks that we find the good-faith exception to the exclusionary rule applicable. In *United States v. Leon*, 468 U.S. 897, 920, 104 S.Ct. 3405 (1984), the Supreme Court held that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in

objective good faith. "However, *Leon* cautioned that certain police conduct would not qualify for this exception, including where (1) the magistrate is 'misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth'; or (2) the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Jaggers v. State*, 687 N.E.2d 180, 184 (Ind. 1997) (citing *Leon*, 468 U.S. at 923). In discussing the good faith exception to the exclusionary rule, our supreme court additionally observed: "In applying *Leon*, our cases have stressed the importance of accurately presenting all relevant information to the magistrate. … Only then can the magistrate make the neutral and detached determination the Fourth Amendment requires of whether probable cause exists." *Id.* at 185 (internal citation omitted).

[16] A probable cause affidavit must include "material facts" known to law enforcement. *Ware v. State*, 859 N.E.2d 708, 718 (Ind. Ct. App. 2007), *trans. denied*. "The typical formulation of [omitted] 'material' facts is that they cast doubt on the existence of probable cause." *Query v. State*, 745 N.E.2d 769, 772 (Ind. 2001). Although it may not be practical to include all information related to an investigation in a probable cause affidavit, "the best course for police to follow is to include any information that could conceivably affect a probable cause determination." *Ware*, 859 N.E.2d at 719-20.

[17] When material information is omitted from a probable cause affidavit, such omission will invalidate a warrant if (1) the police omitted facts with the intent

to make the affidavit misleading or with reckless disregard for whether it would be misleading, and (2) the affidavit supplemented with the omitted information would have been insufficient to support a finding of probable cause. *Id.* at 718. We have recognized that omissions from a probable cause affidavit are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Gerth v. State*, 51 N.E.3d 368, 375 (Ind. Ct. App. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3rd Cir. 2000)).

[18] Here, the affidavit represented that multiple "controlled buys" had been conducted with CI and Target but did not address irregularities such as Target not being searched. The affidavit also stated that Target had exited the Turner Street residence before providing CI with cocaine on the third occasion. Then, outside the context of the drug buys, the affidavit stated that Vance was an occupant of the Turner Street residence. This permits an inference that Target and Vance were the same person. Whether a drug dealer is an occupant of, or simply a visitor to, a residence is "information that could conceivably affect a probable cause determination." *Ware*, 859 N.E.2d at 720. The likelihood that evidence of a crime will be found at the home of a dealer is arguably greater than the likelihood that evidence of a crime will be found at a residence he visited. Had the affidavit herein been supplemented with the fact that there were two individuals as opposed to one, it would have been made evident to the issuing magistrate that the Target had no known connection with the Turner Street residence apart from having been seen exiting it before consummating a

third drug sale with CI. The good faith exception will not reward the creation of a misleading impression to avoid revealing the clear absence of probable cause. As the Court observed in *Jaggers*: "*Leon*'s rationale is not advanced by effectively allowing the State to claim good faith reliance on a warrant after a less than faithful effort to establish probable cause to obtain it." 687 N.E.2d at 186. The good faith exception "cannot save the illegally seized evidence" in these circumstances. *See id.*

# Conclusion

The evidence obtained at Vance's residence was seized in violation of his Fourth Amendment rights and was properly suppressed.

Affirmed.


Brown, J., concurs.
Bradford, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Dusten T. Vance,<br>*Appellee-Defendant.* | Court of Appeals Case No.<br>18A-CR-1746 |

**Bradford, Judge, dissenting.**

[1] Because I believe the search warrant was supported by probable cause, I respectfully dissent.

[2] The State contends that the trial court erred by concluding that the previously-issued search warrant lacked probable cause. "[The reviewing courts] owe great deference to the initial probable-cause determination, and will not invalidate warrants by interpreting probable cause affidavits in a hypertechnical, rather than a commonsense, manner." *Watkins v. State*, 85 N.E.3d 597, 603 (Ind. 2017) (internal quotations and citations omitted). Reviewing courts include both the trial court ruling on a motion to suppress and the appellate court reviewing that decision. *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997).

> Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case. [*Mehring v. State*, 884 N.E.2d 371, 376 (Ind. Ct. App. 2008)] (citing [*Figert* 686 N.E.2d at 830]). In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id.* at 376–77 (citing *State v. Spillers,* 847 N.E.2d 949, 953 (Ind. 2006)).

*Casady v. State*, 934 N.E.2d 1181, 1188–89 (Ind. Ct. App. 2010), *trans. denied*. The reviewing court's duty is to determine whether the issuing magistrate had a substantial basis for concluding that probable cause existed. *Id.* at 1189. "While we review the question *de novo*, we give significant deference to the issuing magistrate's determination and focus on whether reasonable inferences drawn from the totality of the evidence support the finding of probable cause." *Id.* When deciding whether the affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant. *Id.*[6]

---

[6] The Majority uses a standard of review which was used by the Indiana Supreme Court to review a trial court's decision regarding a motion to suppress evidence obtained by a warrantless police search; however, this case regards whether the issued search warrant was supported by probable cause. Therefore, the correct standard should give deference to the issuing trial court's determination of probable cause rather than the reviewing trial court's decision on the motion to suppress. *See Watkins*, 85 N.E.3d at 599 ("[W]e give great deference to the prior judge's initial, underlying probable cause finding—affirming if a substantial basis

[3]     Given the totality of the circumstances set forth by the affiant, the trial court made a common-sense determination that there was a fair probability that controlled substances would be found in the Turner Street residence ("the Residence") before issuing the warrant. First, all three controlled buys followed a consistent pattern.[7] The Target exited the vehicle and entered either a hotel or residence. Upon exiting the structure, the Target returned to the vehicle and dealt the CI a controlled substance. The third controlled buy was no exception. The Target exited the CI's vehicle and entered the Residence. After exiting the Residence, the Target returned to the vehicle and delivered the controlled substance to the CI. Moreover, the affiant averred that through his training and experience he had learned that individuals involved in drug trafficking use residences in which they do not live to store the controlled substances that they sell. Finally, the affiant averred that the Residence is a well-known drug house and has been the subject of a search by the Muncie SWAT on a prior occasion.

---

supported it and resolving doubtful cases in favor of upholding the warrant.") (internal quotations and citations omitted).

[7] The fact that the Target was never searched by the State before going into the Residence does not prevent these three drug deals from being classified as controlled buys. For a buy to be controlled, only one party, *i.e.* the CI, will be controlled by law enforcement. A useful if not universally-applicable definition of a controlled buy involves a procedure where "law enforcement officers search the *informant* to make sure that she does not have any illegal narcotics before the purchase; officers provide the *informant* with marked bills with which to purchase the drugs; officers place a body wire on the *informant* and monitor all conversations during the purchase; the *informant* is placed under visual surveillance during the purchase; and the *informant* turns over the contraband to officers immediately after the purchase." *U.S. v. Clyburn*, 24 F.3d 613, 615 n.1 (4th Cir. 1994) (emphases added). For a case with a controlled buy similar to the current matter, *see U.S. v. Bacon,* 2018 WL 4483181 *2–3 (N.D. Ind. 2018) (acknowledging that two controlled buys occurred when a third party took money from a CI, entered the residence in question, exited the residence, and dealt the CI drugs, even though the third party was neither under the Government's control nor searched by the Government at any time).

This evidence leads to the common-sense and logical inference that the Residence was used as a place to store controlled substances. Therefore, the trial court had a substantial basis for concluding that probable cause existed before issuing the search warrant.

[4] Because I would reverse the trial court's order granting Vance's motion to suppress, I respectfully dissent.